IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>United States Department of Justice<br>Consumer Protection Branch<br>450 5th St. NW, Suite 6400,<br>Washington, DC 20001,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>APPFOLIO, INC.,<br>a Delaware corporation,<br>50 Castilian Dr.,<br>Goleta, CA 93117,<br><br>　　　　　Defendant. | Case No.: 1:20-cv-03563<br><br><br>**COMPLAINT FOR CIVIL PENALTIES,<br>PERMANENT INJUNCTION, AND<br>OTHER EQUITABLE RELIEF** |

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its Complaint, alleges:

1.　　Plaintiff brings this action under Sections 5(a), 13(b), and 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 56(a)(1); and Section 621(a) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(a), to obtain monetary civil penalties and injunctive or other relief from Defendant AppFolio, Inc., for engaging in violations of the FTC Act, 15 U.S.C. § 45(a), and the FCRA, 15 U.S.C. §§ 1681-1681x.

**JURISDICTION AND VENUE**

2.　　This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and under 15 U.S.C. §§ 45(a), 53(b), 56(a), and 1681s.

3.　　Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) and 1395(a), and 15 U.S.C. § 53(b).

**DEFENDANT**

4. Defendant AppFolio, Inc. ("AppFolio" or "Defendant"), is a Delaware corporation with its principal place of business in Goleta, California. Defendant transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Defendant has furnished background screening reports about consumers throughout the United States.

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

5. The FCRA was enacted in 1970, became effective on April 25, 1971, and has been in force since that date. The Fair and Accurate Credit Transactions Act amended the FCRA in December 2003, and the Dodd-Frank Act amended the FCRA in July 2010.

6. Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency, irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act.

7. Defendant, through its provision of tenant background screening services, is and has been a "Consumer Reporting Agency," as defined in Section 603(f) of the FCRA, 15 U.S.C. § 1681a(f). That section defines a Consumer Reporting Agency as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing [C]onsumer [R]eports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing [C]onsumer [R]eports.

Defendant regularly sells in interstate commerce information on consumers that it assembles for the purpose of furnishing Consumer Reports to third parties, as described further below.

8. The FCRA imposes several obligations on Consumer Reporting Agencies, including obligations to: (1) exclude certain obsolete information from Consumer Reports, 15 U.S.C. § 1681c, and (2) follow reasonable procedures to assure the maximum possible accuracy of Consumer Reports, § 1681e(b). These obligations are described in more detail below.

### Defendant's Tenant Screening Reports Are Consumer Reports Subject to the Requirements of the FCRA

9. Defendant furnishes background screening reports about consumers to thousands of client property management companies to, among other things, assist the clients in selecting tenants ("Tenant Screening Reports").

10. Defendant obtains the information for its Tenant Screening Reports from other Consumer Reporting Agencies and is a "Reseller" under Section 603(u) of the FCRA, 15 U.S.C. § 1681a(u). That section defines a Reseller as a Consumer Reporting Agency that:

> (1) assembles and merges information contained in the database of another [C]onsumer [R]eporting [A]gency or multiple [C]onsumer [R]eporting [A]gencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and
> (2) does not maintain a database of the assembled or merged information from which new [C]onsumer [R]eports are produced.

11. Defendant's Tenant Screening Reports may include public record information, including criminal records and records related to residential eviction proceedings ("Eviction Records"), of individuals. In addition, the Tenant Screening Reports may include rental payment history and credit information from Experian Data Corporation's RentBureau Division and Experian Information Solutions, Inc., respectively.

12. The Tenant Screening Reports that Defendant furnishes to its clients are "Consumer Reports" as defined in Section 603(d) of the FCRA, 15 U.S.C. § 1681a(d). That section defines a "Consumer Report" as:

> [A]ny written, oral, or other communication of any information by a [C]onsumer [R]eporting [A]gency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 604.

Defendant's Tenant Screening Reports are communicated directly to third parties; bear on, among other things, consumers' credit worthiness, general reputation, and personal characteristics; and are used as a factor in determining the consumer's eligibility for purposes specified in Section 604 of the FCRA, 15 U.S.C. § 1681b, which include a business transaction initiated by consumers, § 1681b(a)(3)(F).

### Defendant's Reporting of Obsolete Eviction and Criminal Records

13. Section 605(a) of the FCRA, 15 U.S.C. § 1681c(a), generally prohibits Consumer Reporting Agencies from making any Consumer Report that includes Eviction Records and non-conviction criminal records that are more than seven years old.

14. Until at least June 2019, in multiple instances, Defendant reported Eviction Records and non-conviction criminal records that were more than seven years old.

### Defendant's Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

15. Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires that "[w]henever a [C]onsumer [R]eporting [A]gency prepares a [C]onsumer [R]eport it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

16. Until at least April 2019, Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the criminal record and Eviction Record information in its Tenant Screening Reports.

17. Defendant obtained criminal records and Eviction Records for inclusion in Tenant Screening Reports from a third party vendor, CoreLogic National Background Data, LLC or CoreLogicScreening Services, LLC ("CoreLogic").

18. Defendant implemented insufficient procedures to assess the accuracy of the information it obtained from CoreLogic before including the information in Tenant Screening Reports. Rather, Defendant generally relied on CoreLogic's procedures for matching the information from a consumer's housing application to criminal record and Eviction Record information in public records, retrieving those criminal records and Eviction Records from public records, and accurately returning those records to Defendant.

19. However, Defendant had limited knowledge of the procedures CoreLogic used to match, retrieve, and return criminal records and Eviction Records to Defendant. Further, for criminal records, Defendant's contract with CoreLogic stated:

> [Defendant] acknowledges and agrees that . . . due to the organization of criminal records and/or the nature of the query, there will be instances where identifying information appears to match the applicant on which Screening Results are sought, which information may not pertain to the End User's applicant, and that [Defendant] will use commercially reasonable efforts, or cause its End-Users to use commercially reasonable efforts, to independently verify the information in the Screening Results to ensure that it pertains to the applicant before any adverse action is taken against the applicant.

20. Additionally, CoreLogic's contract with Defendant disclaimed any guarantee as to the accuracy of the data it provided. For example, one contract provision stated, "[Defendant] acknowledges that [CoreLogic] cannot guarantee the accuracy and/or completeness of the consumer information furnished."

21. Another provision stated:

> THE SERVICES ARE PROVIDED 'AS IS' WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTIES OF ACCURACY, TIMELINESS,

COMPLETENESS, MERCHANTIBILITY, NON-INFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE (EVEN IF THAT PURPOSE IS KNOWN TO [CORELOGIC]), OR ARISING FROM COURSE OF DEALING, USAGE OR TRADE PRACTICE.

22. Defendant's practices did not satisfy the statutory requirement to follow reasonable procedures to assure maximum possible accuracy. Defendant's failures included the following:

   a. Failing to follow reasonable procedures to assess whether the identifiers in criminal records and Eviction Records reasonably matched the applicant's before including the records in Tenant Screening Reports;

   b. Failing to follow reasonable procedures to assess whether there were internal inconsistencies in the identifiers or results that clearly included information on multiple individuals before including criminal records and Eviction Records in Tenant Screening Reports;

   c. Failing to follow reasonable procedures to assure that the eviction and criminal record information contained in Consumer Reports it furnished accurately reflected the disposition, offense name, and offense type; and

   d. Failing to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal or eviction action in the same report.

## Results of Defendant's Failures

23. As a result of Defendant's failure to follow reasonable procedures to assure maximum possible accuracy, in many instances, Defendant provided Tenant Screening Reports with:

    a. Records for individuals with a different name from the applicant (including names that are not common nicknames or slight misspellings of the applicant's name) until at least December 2018;

    b. Records for individuals with a different date of birth or other identifier from the applicant;

    c. Records for multiple individuals with different identifiers, such as names and dates of birth;

    d. Records with a missing or inaccurate disposition;

    e. Records with a missing or inaccurate offense name, type, or date; and

    f. Multiple entries for the same criminal or eviction action.

24. Defendant received consumer disputes about this reporting of inaccurate information. Nonetheless, Defendant did not make changes to its practices and procedures that addressed these failures.

25. In multiple instances, Defendant's failure to follow reasonable procedures to assure maximum possible accuracy of Consumer Reports may have led to the denial of housing or other opportunities.

### Count I – Violations of Section 605(a) of the FCRA

26. As described in Paragraphs 13 through 14, and in multiple instances, Defendant has provided Consumer Reports that included Eviction Records and non-conviction criminal records that are more than seven years old.

27. By and through the acts and practices described in Paragraph 26, Defendant has violated Section 605(a) of the FCRA, 15 U.S.C. § 1681c(a).

28. Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 26 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count II – Violations of Section 607(b) of the FCRA

29. As described in Paragraphs 15 through 25, and in multiple instances, Defendant has failed to follow reasonable procedures to assure maximum possible accuracy of Consumer Report information.

30. By and through the acts and practices described in Paragraph 29, Defendant has violated Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

31. Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 29 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### THIS COURT'S POWER TO GRANT RELIEF

32. Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A), authorizes the Court to award monetary civil penalties in the event of a knowing violation of the FCRA, which constitutes a pattern or practice of violations. Defendant's violations of the FCRA, as alleged in this Complaint, have been knowing and have constituted a pattern or practice of violations. As specified by the Federal Civil Penalty Inflation Adjustment Act of 1990, 28 U.S.C. § 2461(a), as amended, the Court is authorized to award a penalty of not more than $4,063 per violation for penalties assessed after January 14, 2020.

33. Each instance in which Defendant has failed to comply with the FCRA constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties under

Section 621 of the FCRA, 15 U.S.C. § 1681s.  Plaintiff seeks monetary civil penalties for every separate violation of the FCRA.

34. Under Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a), and Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction prohibiting Defendant from violating the FTC Act and the FCRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court, pursuant to 15 U.S.C. §§ 45(a), 53(b) and 1681s, and pursuant to the Court's own equitable powers:

A. Enter judgment against Defendant and in favor of Plaintiff for each law violation alleged in this Complaint;

B. Enter a permanent injunction against Defendant to prevent further violations of the FCRA and the FTC Act, as alleged herein;

C. Award Plaintiff monetary civil penalties from Defendant for each violation of the FCRA as alleged in this Complaint;

D. Order Defendants to pay the costs of this action; and

E. Award Plaintiff such additional relief as the Court may deem just and proper.

DATED: December 8, 2020

**FOR THE UNITED STATES:**

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

DANIEL J. FEITH
Deputy Assistant Attorney General

GUSTAV W. EYLER (D.C. Bar No. 997162)
Director
Consumer Protection Branch

LISA K. HSIAO (D.C. Bar No. 444890)
Assistant Director


/s/ Zachary A. Dietert
ZACHARY A. DIETERT (D.C. Bar No. 1003784)
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
450 5th Street, NW, Ste. 6400-South
Washington, DC 20530
Telephone: (202) 616-9027
Fax: (202) 514-8742
Email: Zachary.A.Dietert@usdoj.gov

*Of Counsel*

TIFFANY GEORGE (N.Y. Bar No. 4023248)
WHITNEY MOORE (D.C. Bar No. 496842)
JARAD BROWN (CA Bar No. 294516)
Attorneys
Federal Trade Commission
Division of Privacy and Identity Protection
Federal Trade Commission
600 Pennsylvania Ave, NW
Washington, DC 20580
Mail Stop CC-8232
(202) 326-3040 (George)
(202) 326-3392 (Fax)